# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

COUPLED PRODUCTS, LLC                            CIVIL ACTION NO. 09-0323

VERSUS                                                    JUDGE S. MAURICE HICKS, JR.

NOBEL AUTOMOTIVE MEXICO LLC,          MAGISTRATE JUDGE HORNSBY
NOBEL AUTOMOTIVE OHIO LLC,
MANDO AMERICA CORPORATION, AND
GENERAL MOTORS LLC

## MEMORANDUM RULING

Before the Court is Plaintiff Coupled Products, LLC's ("Coupled Products") Motion to Strike Portions of and Dismiss in Its Entirety the Nobel Defendants' Amended Counterclaim (Record Document 105).  Coupled Products moves for dismissal of the ten-count amended counterclaim pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).  Additionally, Coupled Products contends that the amended counterclaim contains allegations based on statements from a settlement letter, which are inadmissible and should be stricken pursuant to Federal Rule of Civil Procedure 12(f).  While the Nobel Defendants have withdrawn their counterclaim for negligent misrepresentation, they have opposed the motion in all other respects.  See Record Document 108.  For the reasons which follow, the motion (Record Document 105) is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND[1]

This is a patent case.  On April 25, 2006, the United States Patent and Trademark

---

[1]Because this case is currently before the undersigned on a motion to dismiss, the Court accepts as true the factual allegations in the Nobel Defendants' Amended Counterclaim.  See Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002); Glessner v. Kenny,  952 F.2d 702, 712 (3rd Cir. 1991).

Office ("PTO") issued U.S. Patent No. 7,032,500 ("the 500 Patent"), entitled "Single Point

Steering Gear Hydraulic Connection."   Record Document 68 at ¶ 8.   Coupled Products

alleges it owns, by assignment, the 500 Patent.  See id. at ¶ 9.  Coupled Products contends

that Nobel Automotive Mexico, LLC and Nobel Automotive Ohio, LLC ("the Nobel

Defendants") have wilfully infringed the 500 Patent.  See id. at ¶¶ 10-21.[2]

The Nobel Defendants filed an Amended Counterclaim on April 1, 2010.  See

Record Document 83.  It contains ten counts:

Count I:        Declaratory Judgment of Invalidity
Count II:       Invalidity
Count III:      Patent Misuse
Count IV:       Inequitable Conduct
Count V:        Abuse of Right
Count VI:       Fraudulent Procurement of the 500 Patent
Count VII:      Unfair Trade Practices
Count VIII:     Tortious Interference with Business Relations
Count IX:       Fraud
Count X:        Negligent Misrepresentation

Id.  The factual allegations contained in the Amended Counterclaim are set forth below.

In Count I (Declaratory Judgment of Invalidity), the Nobel Defendants allege that

"[t]here is an actual, substantial and continuing justiciable controversy" regarding the

_____

[2]Coupled Products originally named Mando America Corporation ("Mando") and
General Motors, LLC ("GM") as defendants.  See Record Document 68.  On July 15, 2010,
Coupled Products, Mando, and GM filed a Joint Motion for Dismissal, stating:

Coupled Products . . ., and defendants, [GM] and [Mando] . . . , who jointly
stipulate that all matters of controversy between them relating to this action
have been fully compromised and settled, and therefore jointly move the
Court to dismiss Plaintiff's claims against Defendants and Defendants'
counterclaims against Plaintiff.

Record Document 110.  The Court granted the Joint Motion for Dismissal on July 15, 2010.
See Record Document 111.

infringement, validity and enforceability of the 500 Patent.  Id. at ¶ 85.  The Nobel Defendants further contend that they have "not infringed any valid and enforceable claim of the 500 Patent."  Id. at ¶ 86.  More specifically, they allege "upon information and belief" that the 500 Patent and all claims thereof are invalid and unenforceable for failure to comply with the conditions for patentability.  Id. at ¶ 87.  Additionally, they allege "upon information and belief" that "the 500 Patent and all claims thereof are unenforceable due to the inequitable conduct of the inventors, the inventors' representatives, and others involved in a substantial way with the application that matured into the 500 Patent, including but not limited to Coupled Products' predecessor-in-title, Dana Corporation ("Dana"), arising from the intentional and deliberate decision to file the application despite full knowledge its claims were barred . . . and from intentionally withholding from the U.S. Patent and Trademark Office material information related to the commercialization of the invention of the 500 Patent prior to its filing date."  Id. at ¶ 88.  Finally, the Nobel Defendants contend that they are entitled to a declaration that they have not infringed any valid and enforceable claim of the 500 Patent.  See id. at ¶ 90.

In Count II (Invalidity), the Nobel Defendants re-allege the preceding paragraphs[3] and again contend that "[t]he claims of the 500 Patent are invalid for failure to satisfy the statutory requirements for patentability."  Id. at ¶ 91-92.  They also seek "a declaration that

---

[3]Starting with Count II and continuing at the beginning of every count thereafter, the Nobel Defendants state:

Nobel re-adopts, re-alleges, and re-avers the preceding paragraphs of this Answer, Affirmative Defenses and Counterclaim by reference.

Record Document 83.

all claims of the 500 Patent are invalid." Id. at ¶ 93.

Counts III (Patent Misuse) and IV (Inequitable Conduct) contain identical factual allegations. See id. at ¶¶ 94-103. The Nobel Defendants allege that they are entitled to a declaration that the 500 Patent is void and unenforceable due to Coupled Products' "misuse in commencing litigation against Nobel without undertaking the necessary objective pre-filing investigation to determine whether the accused products or services infringed valid claims of the 500 Patent and then continuing this litigation knowing that Nobel did not infringe the claims of the 500 Patent." Id. at ¶¶ 96, 101. They further contend that despite knowing its product was non-patentable and/or that its patent was invalid, Coupled Products attempted to use the 500 Patent for an improper purpose by threatening competitors, filing this baseless lawsuit, diverting and depriving the Nobel Defendants of business, and engaging in predatory pricing practices. See id. at ¶¶ 97, 102. The Nobel Defendants maintain that "the allegations of patent infringement by Coupled Products . . . are completely baseless and amount to sham litigation." Id.

As to Count V (Abuse of Right), the Nobel Defendants allege that Coupled Products asserted its rights in this lawsuit to cause harm and in violation of morals, good faith, and/or elementary fairness. See id. at 105. Moreover, they contend that Coupled Products' claims asserting willful infringement are not in furtherance of a serious or legitimate interest worthy of judicial protection. See id. at 106.

In Count VI (Fraudulent Procurement of the 500 Patent), the Nobel Defendants allege that Coupled Products, through its predecessor-in-interest Dana, procured the 500 Patent fraudulently by actively concealing and materially representing facts that would show the patented invention was on sale more than one year before the application date for the

patent.  See id. at 109.  They contend that if such fact had been known by the Examiner, it would have resulted in rejection of the patent.  See id.

As to Count VII (Unfair Trade Practices), the Nobel Defendants contend that "[a]s recently as May of 2009, Coupled Products used this baseless lawsuit to divert and deprive Nobel of business it had or would have received from customers and potential customers, which amounts to unscrupulous and deceptive trade practices in violation of [Louisiana Revised Statute] § 51:1401, et seq. and/or the common law and/or other applicable statutes."  Id. at ¶ 112.  The Nobel Defendants further allege that "Coupled Products has engaged in other unfair methods of competition and unfair or deceptive acts or practices that are unlawful."  Id. at ¶ 114.  Finally, the Nobel Defendants maintain that Coupled Products continues to use the 500 Patent to threaten parties in the hopes of gaining an unjust financial advantage and to engage in predatory pricing practices.  See id. at ¶ 114.

In Count VIII (Tortious Interference with Business Relations), the Nobel Defendants allege that Coupled Products' conduct relating to willful infringement includes "malicious and wanton interference with Nobel's customers."  Id. at ¶ 118.  They contend that this intentional and improper conduct constituted "tortious interference with Nobel's business relations and are violative of Louisiana Civil Code Article 2315 and/or the common law and/or other applicable statutes."  Id.

As to Count IX (Fraud), the Nobel Defendants allege that Coupled Products' conduct relating to the willful infringement includes "misrepresentations or suppressions of the truth made with the intention either to obtain an unjust advantage with the [Patent and Trademark Office ] and/or other and to cause a loss or inconvenience to Nobel."  Id. at ¶ 121.  They contend that these "actions constitute fraud and are violative of Louisiana Civil

Code Article 1953 and/or the common law and/or other applicable statutes." Id. at ¶ 122.

In Count X (Negligent Misrepresentation), the Nobel Defendants allege that Coupled Products' conduct includes negligent misrepresentations to the Patent and Trademark Office, as Coupled Products had a legal duty to disclose all material information to the Patent and Trademark Office and/or others and breached that legal duty. See id. at ¶ 125. They contend that these "actions constitute negligent misrepresentation and are violative of Louisiana Civil Code Article 2315 and/or the common law and/or other applicable statutes." Id. at ¶ 126.

Now before the Court is Coupled Products Motion to Strike Portions of and Dismiss in its Entirety the Counterclaims of the Nobel Defendants. See Record Document 105. Coupled Products argues that the ten-count amended counterclaim is without merit and fails to meet the basic pleading requirements under Rule 12(b)(6), Rule 9(b), and/or Rule 8(a) for stating a claim on any of the causes of action alleged. See id. It further maintains that the amended counterclaim contains allegations based on statements from a settlement letter, which are inadmissible under Federal Rule of Evidence 408. See id.[4]

---

[4]Pursuant to Rule 12(f), Coupled Products filed a Motion to Strike factual allegations based on statements from a settlement letter. These allegations are found in paragraphs 68-70 of the Answer and Affirmative Defenses to the Seconded Amended Complaint and Amended Counterclaims (Record Document 83). Coupled Products also seeks to strike the settlement letter, which was attached to Record Document 83 as Exhibit A.

The Nobel Defendants do not address the Motion to Strike in their opposition (Record Document 108); thus, this Court is left to assume that there is no opposition to the Motion to Strike. Accordingly, the Motion to Strike is **GRANTED**. Paragraphs 68-70 and of Record Document 83 and Exhibit A to Record Document 83 are hereby stricken from the record.

## LAW AND ANALYSIS

### I.   Rule 12(b)(6) Standard.

"To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief-including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir.2007), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S.Ct. at 1974.  "When considering a motion to dismiss, the court accepts as true the well-pled factual allegations in the complaint, and construes them in the light most favorable to the plaintiff." Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002) (citation omitted).  The court generally must not consider any information outside the pleadings.  See Sullivan v. Leor Energy, LLC, 600 F.3d 542, 546 (5th Cir.2010).

### II.   Rule 9(b) Standard.[5]

Mirroring the standard set forth above, Federal Rule of Civil Procedure 8(a)(2) requires that "a pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, ⸺ U.S.⸺ at ⸺, 129 S.Ct. 1937, 1949 (2009), quoting Twombly, 550 U.S. 544, 127 S.Ct. 1955.  A pleading

---

[5]"A dismissal for failure to plead fraud with particularity under Rule 9(b) is treated as a dismissal for failure to state a claim under Rule 12(b)(6)." U.S. ex rel. Grubbs v. Kanneganti, 565 F.3d 180, 185 (5th Cir. 2009).

that offers labels and conclusions or a formulated recitation of the elements of a cause of action will not do, nor will a complaint suffice if it tenders naked assertions devoid of further factual enhancement.  See Iqbal, ——— U.S. at ———, 129 S.Ct. at 1949.

Competing with Rule 8's demand for brevity is Rule 9(b), which provides:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

F.R.C.P. 9(b).  "[T] he Rule 9(b) standards require specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation why they are fraudulent." Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir.2005); see also Campa v. Nationwide Property & Casualty Ins. Co., No. 10-2707, 2010 WL 3733469, at *1 (S.D.Tex. Sept. 7, 2010) ("Essentially, the standard requires the complaint to allege answers to 'newspaper questions' (who, what, when, where, and how) of the alleged fraud.").  However, when ruling on a motion to dismiss based on Rule 9(b), courts are "merely to assess the feasibility of the complaint, not to assay the weight of the evidence which might be drawn in support thereof."  Blythe v. Deutsche Bank, 282 F.Supp.2d 1032, 1075 (D.Minn. 2003).

## III.    Counts I and II.

Counts I and II set forth the Nobel Defendants' claims for declaratory judgments of invalidity and noninfringement.  Such counterclaims are common place and are asserted in nearly every patent infringement case.  Coupled Products argues these counterclaims are not supported by sufficient facts and that "Nobel's 'kitchen-sink' approach to pleading noninfringement and invalidity should not be permitted."  Record Document 109 at 10.  The Court disagrees.

First, Coupled Products contends that the Nobel Defendants cannot state claims based on alleged conduct by Dana.  More specifically, Coupled Products argues that "[a]ll of Nobel's counterclaims are improperly based to one degree or another on alleged inequitable conduct by Dana in the [Patent and Trademark Office] proceedings or otherwise, prior to Coupled Products' acquisition of certain Dana assets," and thus are "expressly prohibited and barred by the orders entered by the U.S. Bankruptcy Court for the Southern District of New York," which provided that "the assets were transferred to Coupled Products 'free and clear of all Claims."  Record Document 105-1 at 13.  However, the Court finds that the Nobel Defendants have, *at this stage*, plead facts sufficient to overcome this contention.  Relying upon Section 363(f) of the Bankruptcy Code,[6] the Nobel Defendants maintain that Counts I and II of the Amended Counterclaim, which seek declaratory relief in the form of a judgment deeming the 500 Patent invalid due to certain acts by Dana in the original prosecution of the patent, assert no "interest in property." Rather, the Nobel Defendants assertion, as set forth in the factual allegations in the

_____

[6]Title 11, United States Code, Section 363(f) provides:

The trustee may sell property . . . free and clear of any interest in such property of an entity other than the estate, only if –

    (1)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;
    (2)    such entity consents;
    (3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
    (4)    such interest is in bona fide dispute; or
    (5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

Amended Counterclaim, is that the "property" at issue, i.e., rights to the 500 Patent, do not even exist because the 500 Patent is invalid and/or unenforceable.

Additionally, the Nobel Defendants argue that in reality, Dana and Coupled Products are one in the same and differ in name only.  The contend that Coupled Products, Inc. was a division of Dana, that Dana was thereafter restructured, and Coupled Products, LLC was formed.  The Nobel Defendants further note, and factually allege, that many of Coupled Products' current employees were previously employed by Dana, including one of the original patent applicants.  See Record Document 83 at ¶ 48(a).  This allegation goes to Coupled Products' scienter and intent.  The Nobel Defendants have also alleged that Coupled Products knew the patent was invalid, but did not so advise the Patent and Trademark Office, even after it acquired the patent:

> In or about September, 2007, Dana transferred its Coupled Products division, Coupled Products, Inc., to a new company, Coupled Products, LLC, . . ., and on information and belief, on that date or thereafter, assigned or licensed the 500 Patent to Coupled Products.

> Coupled Products has at no time corrected any of the aforesaid material omissions or misrepresentations, or supplemented any of the omitted and concealed information referred to above.

Id. at ¶ 58-59.

The Court likewise finds that there are sufficient factual allegations, even under Rule 9(b)'s heightened standard, to support the Nobel Defendants' claims for declaratory relief. As to the invalidity by virtue of the "on-sale bar" set forth in 35 U.S.C. § 102(b), the Amended Answer and Counterclaim alleges:[7]

---

[7]The Court again notes that the Nobel Defendants "re-adopt[ed], re-allege[d], and re-aver[red] the preceding paragraphs of [its] Answer, Affirmative Defenses and Counterclaim by reference."

Coupled Products, through its attorneys, employees and agents, engaged in the following acts and omissions with regard to the 500 Patent, this litigation, and uses it has made of both, which violated patent laws and other laws relating to unfair competition, as more fully specified hereinafter:

(a)     An employee or employees of Coupled Products then working for Dana Corporation, produced Drawing Number 15167590/3 with drawing name "POWER STEERING HOSE ASM" on or about October 21, 2002;

(b)     Upon information and belief, Drawing Number 15167590/3 with drawing name "POWER STEERING HOSE ASM" was based on technical data provided to an employee or employees of Coupled Products, then working for Dana, by either GM or Mando America;

(c)     Drawing Number 15167590/3 with drawing name "POWER STEERING HOSE ASM" shows that the invention of at least one claim of the 500 Patent was ready for patenting before October 21, 2002;

(d)     Upon information and belief, Coupled Products sent Mando America a letter on or about November 27, 2002 stating that, as of November 1, 2002, Dana had a new legal entity name, Coupled Products;

(e)     On November 26, 2002, Coupled Products sent Mando America a commercial offer to sell part number 15167590;

(f)     The invention in issue was fully conceived and in or about November 2002, Coupled Products made commercial offers for sale to Mando America and/or GM which, upon information and belief, the latter accepted with consideration so as to constitute a sale under 35 U.S. C.A. §102(b), all of which was known to Coupled Products and its employees.

Id. at ¶ 48.  The Nobel Defendants further alleged that on February 16, 2006, the last day

for filing supplemental documentation in the file of the patent prosecution and after both

notice of allowability and allowance of the claims in issue, Dana, Coupled Products'

predecessor-in-interest, caused to be to filed the Declaration of James Beatty purporting

to disclose on-sale information pertaining to the invention in issue but only as to matters

not central to patentability, still omitting any reference to the commercial sale of the entire

Page 11 of  19

invention.  Id. at ¶ 52.  At the same time, Dana also filed an Information Disclosure

Statement ("IDS") purporting to disclose the Declaration of James Beatty.  Id.  The Nobel

Defendants go on to allege:

> Upon filing the IDS, Dana, Coupled Products' predecessor-in-interest with respect to the 500 Patent, instructed the PTO not to consider the said Declaration . . . and also filed Comments on Statement of Reasons for Allowance dated February 16, 2006, purporting to argue that the patent application set forth additional limitations in the claims that were patentable over the cited references.

> By filing the IDS as part of a package of documents and failing to disclose the important documents showing readiness for patent and commercial sale, and then instructing the examiner not to consider the IDS, Dana, Coupled Products' predecessor-in-interest with respect to the 500 Patent, intentionally omitted information and filed misleading information that appeared on its face not to address any significant aspect of the application because it did not pertain to the second portion of the bracket defining a deformable finger for retaining a hose assembly that deforms after insertion of the hose assembly, which had gone on sale more than a year before the patent was applied for, and omitted to call to the Examiner's attention grounds for the on-sale bar and that did pertain to the point it knew to be of greatest significance to the Examiner.

> The PTO examiner concluded that the portion of the bracket that deforms after insertion of the hose assembly was the sole point of novelty for the invention and without which no patent could have been supported.

Id. at ¶¶ 53-55.

The Nobel Defendants have also specifically identified material information that was

withheld by certain named individuals when the 500 patent was applied for that further

supports the notion that the patent is invalid as a matter of law:

> In or about August 2004, Daryl Sinclair, Jim Beatty and Alexander Grant, employees and agents of Dana, Coupled Products' predecessor-in-interest with respect to the 500 Patent, with due authority to so act and with Dana's full knowledge and intent, withheld material information from the PTO that would have, if disclosed, led the PTO to deny it a patent, namely:

(a)     Failing to disclose all of the inventors of the product at issue, including the person or persons who contributed the principle [sic] idea for the bracket;

(b)     Failing to disclose specifics about the bracket which would have been required for enablement;

(c)     Failing to disclose that the bracket considered by the PTO to be the point of novelty of the 500 Patent and the improvement over the '421 Patent would be classified by Coupled Products as a trade secret.

(d)     Failing to disclose the specific secret features of the bracket, treated as the point of novelty, needed for enablement and best mode.

(e)     Actively concealing the aforesaid Drawing Number 15167590/3 and the letter from Coupled Products to Mando America, dated November 27, 2002, and other documents that would have demonstrated the invention was ready for patenting and on sale more than one year prior to the date the patent was applied for.

. . .

Dana, Coupled Products' predecessor-in-interest with respect to the 500 Patent, also concealed from the PTO examiner that none of the three disclosed inventors was the original inventor of an aspect of the invention that it now claims to have originated.  The vast majority of the patentable features of the invention were in fact invented by Delphi and/or GM before Dana, Coupled Products' predecessor-in-interest with respect to the 500 Patent, applied for the 500 Patent, including the slotted bracket configured to receive a hose assembly on which Coupled Products now claims it holds the patent.

At the time Dana, Coupled Products' predecessor-in-interest with respect to the 500 Patent, applied for the 500 Patent, it also intentionally withheld material information from the PTO that was essential to the invention's usefulness, or to allow it to be practiced by one of ordinary skill in the art, as a sealed power steering fluid assembly because the single-point connection as disclosed did not provide a reliable workable or useful connection of hose assemblies to a steering gear.

Id. at ¶ 49, 56-57.

These detailed factual allegations are sufficient to state declaratory relief claims that

are plausible on their face.  See Twombly, 550 U.S. at 570, 127 S.Ct. at 1974.  Moreover,

in the context of particularity, Coupled Products appears to ask this Court to consider the Nobel Defendants' allegations in a vacuum, without regard to the totality of the facts alleged.  Yet, "Rule 9(b) does not negate the simplicity and flexibility contemplated by Rule 8, and it would be error to focus on Rule 9(b)'s particularity requirement in a vacuum."  In re: Catfish Antitrust Litigation, 826 F.Supp. 1019, 1029  (N.D.Miss. 1993).  "Rule 9(b) requires that the circumstances of fraud be pled with enough particularity to put the party on notice as to the nature of the claim," such that the defendant may prepare a responsive pleading.  Id.  A review of the factual allegations specifically cited above easily meets this standard and the Motion to Dismiss is denied as to Counts I and II, which set forth the Nobel Defendants' claims for declaratory judgments of invalidity and noninfringement.

## IV.   Counts III and IV.

As noted previously, Counts III (Patent Misuse) and IV (Inequitable Conduct) contain identical factual allegations.  See Record Document 83 at ¶¶ 94-103.  Coupled Products seeks dismissal of these counts, arguing that the doctrines of patent misuse and inequitable conduct are defenses to claims of patent infringement, not affirmative claims for relief.  The Court agrees.

As to Count III, the Nobel Defendants argue:

> Historically, patent misuse developed as an equitable defense to an infringement action and was not itself an actionable tort.  Transitron Electronic Corp. v. Hughes Aircraft Co., 487 F. Supp. 885, 893 (D. Mass. 1980).  However, the actions by a patentee that result in patent misuse may also serve as an element of an affirmative claim for damages.  See, e.g., B. Braun Medical, Inc. v. Abbott Laboratories, 124 F.3d 1419, 1428 n. 5 (Fed. Cir. 1997).  As Nobel has asserted an affirmative claim for damages in Count III based on Coupled Products' unlawful and wrongful conduct, Coupled Products' challenge to Count III must fail.

Record Document 108 at 8.  The Court finds this argument unconvincing because the

Nobel Defendants have not enumerated what recognized cause of action is plead in Count III.  Stated another way, the Nobel Defendants have not identified the affirmative claim for damages, i.e., a cognizable cause of action, that employs patent misuse as an element of the claim.  See B. Braun Medical, Inc., 124 F.3d at 1428 n. 5.

As to Count IV, the Nobel Defendants again argue that "inequitable conduct . . . can form the basis of an affirmative claim for damages."  Record Document 108 at 8-9. However, the Nobel Defendants' reliance upon Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp., 382 U.S. 172, 86 S.Ct. 347 (1965) is misplaced.  In Walker Process Equipment, the alleged infringer had asserted an antitrust counterclaim and the United States Supreme Court ruled on whether proof of inequitable conduct could be used as evidence of an antitrust violation.  See id. at 176-177, 86 S.Ct. at 350.  Inequitable conduct was at issue in the context of an antitrust counterclaim and had not been asserted as an independent basis of recovery. Therefore, Walker Process Equipment is inapplicable to the instant matter, as the Nobel Defendants have not asserted antitrust violations. Moreover, the Nobel Defendants have not identified any factual allegations in Count IV that would support an argument that the count attempts to assert anything other than an inequitable conduct defense.[8]

---

[8]Count VI (Fraudulent Procurement of the 500 Patent) is addressed *infra* at Section V.  However, the Nobel Defendants have also relied upon Walker Process Equipment in support of their fraudulent procurement claim and the Court notes that the same rationale applies to Count VI.

**V.      Counts V-IX.**[9]

The state law claims set forth in Counts V-IX relate to the Nobel Defendants'

allegations that the 500 Patent was procured through inequitable conduct.[10]   Coupled

Products seeks dismissal of Counts V-IX on the ground that the state law claims set forth

in these counts are preempted.  The Nobel Defendants have quoted Hunter Douglas, Inc.

v. Harmonic Design Inc., 153 F.3d 1318 (Fed. Cir. 1998), to this Court for the principle "that

state unfair competition and other state tort causes of action addressing conduct

concerning patents in the marketplace is not preempted by federal law if the patent holder

acted in bad faith."   Record Document 108 at 3, citing Hunter Douglas, 153 F.3d at

1335-1336.[11]   The Nobel Defendants also concede that "in order to survive [the] 12(b)(6)

motion, the Court must, in viewing its claims and allegations in a light most favorable to

Nobel, determine whether Nobel has *sufficiently alleged* bad faith communication on the

part of Coupled Products."   Record Document 108 at 4 (emphasis added).

The Nobel Defendants argue that they have met the bad faith requirement based

---

[9]It is clear that Counts VII-IX set forth state law claims, as the Nobel Defendants
reference Louisiana law.   In Count V (Abuse of Right) and Count VI (Fraudulent
Procurement of the 500 Patent), the Nobel Defendants do not reference Louisiana law;
however, in their opposition they clearly state that Counts V-X are state law tort claims.
See Record Document 108 at 2.

[10]"[I]nequitable conduct, while a broader concept than fraud, must be pled with
particularity" under Rule 9(b).   Ferguson Beauregard/Logic Controls, Div. of Dover
Resources, Inc. v. Mega Systems, LLC, 350 F.3d 1327, 1344 (Fed. Cir. 2003).

[11]In Hunter Douglas, which has been overruled on other grounds, the court
discussed "conduct that federal patent law immunizes from state tort liability," namely the
barring of state tort liability "for publicizing a patent in the marketplace unless the plaintiff
can show that the patentholder acted in bad faith."   Hunter Douglas, 153 F.3d at 1335-
1336.

on their specific allegations that Coupled Products' assertions of willful patent infringement against Nobel are completely baseless and amount to "sham litigation."  Record Document 108, citing Record Document 83 at ¶ 116.  According to the Nobel Defendants, "sham litigation" by definition means the suit is "objectively baseless."  See id., citing Record Document 83 at ¶¶ 98, 103, 116, 119, 123 and 127.  Conversely, Coupled Products argues that the Nobel Defendants' bad faith argument fails on multiple grounds.  See Record Document 109 at 6-7.  The Court will focus on Coupled Products' argument that the Nobel Defendants have not sufficiently pled bad faith in the marketplace.  See id. at 7.

Courts assess claims of bad faith on a case-by-case basis.  See GFI, Inc. v. Bean Station Furniture, 286 F.Supp.2d 663, 666 (M.D.N.C. 2003), citing Zenith Elecs. Corp. v. Exzec. Inc., 182 F.3d 1340, 1354 (Fed. Cir. 1999).  "The party asserting bad faith must overcome the presumption of good faith enjoyed by a patentholder who asserts his duly granted patent."  GFI, Inc., 286 F.Supp.2d at 666, citing C.R. Bard, Inc. v. M3 Sys., Inc., 157 F.3d 1340, 1369 (Fed. Cir.1998).  While inequitable conduct before the Patent and Trademark Office may be evidence of a patentholder's bad faith in subsequent contacts with competitors or their customers, *the bad faith necessary to establish a state law tort claim must occur in the marketplace, not before the Patent and Trademark Office*. See GFI, Inc., 286 F.Supp.2d at 667, citing Dow Chem. Co. v. Exxon Corp., 139 F.3d 1470, 1477-1478 (Fed. Cir. 1998) (emphasis added).

Here, the Nobel Defendants have alleged, all upon information and belief, that Coupled Products communicated with Nobel customers regarding this lawsuit and that such communications interfered with Nobel's business.  There is no indication as to the identity

of the person from Coupled Products who made the alleged communications; the identity of the person from Ford and Chrysler who were the recipients of the alleged communications; when the communications occurred; and whether the communications were oral or in writing.  Also upon information and belief, the Nobel Defendants allege that the communications substantially influenced Ford and Chrysler to terminate Nobel as a supplier, even though it concedes that the terminations did not occur until after Nobel asked for more favorable payment terms.

The unsupported conclusions set forth by the Nobel Defendants are not sufficient to allege bad faith *in the marketplace.*  First, the Court notes that the factual allegations are all made upon information and belief.  See generally Heartland Barge Mgmt., LLC v. Dixie Pellets, LLC, No. 09-00585, 2010 WL 703183, *4 (S.D. Ala. Feb. 22, 2010); Jarl v. Apria Health, No. 04-50118, 2004 WL 2075119, *2 (N.D. Ill. Sept. 13, 2004).  The allegations in the Amended Counterclaim do not "reasonably notify" Coupled Products of their purported role in the scheme.  See Jarl, 2004 WL 2075119, *2.  Moreover, the Court finds that the facts do not support a strong inference of bad faith "which is required for pleadings based on information and belief."  Id.  Likewise, for the reasons previously discussed, the facts plead by the Nobel Defendants are insufficient to overcome the presumption of good faith enjoyed by a patentholder who asserts his duly granted patent.  See GFI, Inc., 286 F.Supp.2d at 666.  Accordingly, the Motion to Dismiss is **GRANTED** as to Counts V-IX.

## VI.   Count X.

In their opposition, the Nobel Defendants withdrew their claim for negligent misrepresentation against Coupled Products as set forth in Count X of the Amended

Counterclaim.  <u>See</u> Record Document 108 at 2.  Accordingly, the Motion to Dismiss is **DENIED AS MOOT** as to Count X, as the Nobel Defendants are no longer pursuing this claim.

## CONCLUSION

For the reasons stated above, the Court **DENIES** Coupled Products' Motion to Dismiss as to Counterclaim Counts I and II; **GRANTS** as to Counterclaim Counts III through IX; **DENIES AS MOOT** as to Counterclaim Count X.  Additionally, the Court **GRANTS** Coupled Products' Motion to Strike.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 27th day of September, 2011.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE